UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER FOSTER,

    Plaintiff,

  v.

STATE OF OHIO, et al.,

    Defendants.

Case No. 1:16-cv-920

Black, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

**I. Background**

    **A. Proceedings In Above-Captioned Case**

Plaintiff, a prisoner currently incarcerated at the Southern Correctional Facility (SOCF) and a prolific litigant in both the state and federal courts of Ohio,[1] filed this §1983 action alleging violations of his civil rights while he was incarcerated at the Toledo Correctional Institution (ToCI), as well as after his transfer to SOCF. His original complaint alleges that in September 2014, while at ToCI, he sought help from Chief Inspector Roger Wilson because he was treated like an animal. On September 12, 2014, he alleges that ToCI Warden Coleman ordered ToCI officers to take and dispose of Plaintiff's legal work and other property. After his transfer to SOCF, Plaintiff alleges

---

[1] *See, e.g.,* Southern District of Ohio Case Nos: 1:14-cv-617; 1:14-cv-668; 1:14-cv-642; 1:15-cv-595; 1:15-cv-713; 1:16-cv-835;1:16-cv-846; *see also* Northern District of Ohio Case Nos. 3:15-cv-404; 3:16-cv-658; 3:16cv-2109; 3:16-cv-2168; 3:15-cv-2256; 3:16-cv-476; 3:16-cv-1535; 316-cv-1715. In addition, a recent filing by Plaintiff himself prompted this Court to briefly examine state court filings, which reflect fourteen cases filed by Plaintiff in the Ohio Court of Claims alone, plus a sufficient number of additional cases in the Franklin Court of Common Pleas to cause that court to consider whether Plaintiff should be deemed a "vexatious litigator."

1

that he was subjected to racist and derogatory remarks, and was physically assaulted by a number of officers, including Defendants Rankin, Southworth, Neff, Parish, and John Doe, and possibly Workman.  Plaintiff alleges that Defendant Dr. Ahmed Fiscal denied him medical care after the assault, and continues to deny him care for a skin disease.  The original complaint contains additional allegations regarding Plaintiff's conditions of confinement, as well as an attack on Plaintiff's conviction and sentence.

On October 11, 2016, the undersigned recommended the dismissal of Plaintiff's complaint in its entirety pursuant to 28 U.S.C. § 1915(g) on grounds that, as a prisoner who had at least three "strikes" in the form of prior complaints dismissed with prejudice at the screening stage, Plaintiff was precluded from filing a new complaint *in forma pauperis* absent an allegation that he was in "imminent danger of serious physical injury." (Doc. 4).  However, on December 5, 2016, U.S. District Judge Timothy Black declined that Report and Recommendation ("R&R"), concluding that in his complaint and four subsequent filings, Plaintiff had "adequately alleged imminent harm in a manner sufficient to allow the Court to grant him *in forma pauperis* status."  (Doc. 9 at 3, PageID 37).  Specifically, Plaintiff had alleged in the post-R&R filings that SOCF staff members were "planning their next attack" on Plaintiff, and that he was being continually denied medical treatment for his unspecified skin disease.  Based upon Judge Black's finding that Plaintiff had adequately alleged imminent harm to evade the "three strike" prohibition against future filings, the undersigned conducted a full screening of the merits of Plaintiff's claims under 28 U.S.C. § 1915(e).

In a second R&R filed on February 28, 2017, the undersigned concluded that Plaintiff

> may proceed on the following causes of action: (1) Eighth Amendment excessive force claims against defendants Rardin, Southworth, Neff, Parish, John Doe, and Workman based on plaintiff's allegation that these officers attacked him upon his arrival to SOCF; (2) excessive force claim against Sgt. Bear based on the January 17, 2017 attack; (3) deliberate indifference claim against Dr. Ahmed Fiscal; and (4) conditions of confinement claims at SOCF, including plaintiff's claims regarding wheelchair accessibility, against defendants Warden Erdos, Dyer, and Bear. Having found that the remaining allegations in the complaint fail to state a claim upon which relief may be granted, the remainder of the complaint should be dismissed.

(Doc. 12 at 12, PageID62). Judge Black adopted that R&R over Plaintiff's objections on April 18, 2017. (Docs. 21, 25). In accord with the second R&R, the undersigned directed the U.S. Marshal to serve a copy of the complaint, as supplemented, upon Defendants Rardin, Southworth, Neff, Parish, Workman, Bear, Faisal, Erdos and Dyer. (Doc. 18).

To date, service has been perfected on Defendants Rardin, Parish, Bear, Erdos and Dyer, but has not yet been perfected on Defendants Southworth, Neff, Workman, or Dr. Ahmed Fiscal. Recently, the Court received notice that Defendant Southworth is deceased. On May 16, 2017, the Court directed the Ohio Attorney General to supply additional information for Defendants Workman, Ahmed [Fiscal][2] and Neff, so that service can be reissued. (Doc. 32).

Since the filing of the second R&R, Plaintiff has inundated this Court by filing eighteen motions, as of June 2, 2017. This R&R recommends the *sua sponte* dismissal of the deceased Defendant, as well as the denial of multiple motions seeking entry of

---

[2]This Defendant's name is spelled variously as Ahmed, Ahmad, and Fiscal in the present record. In a related case filed by Plaintiff in the Ohio Court of Claims, the same person appears to have been identified as "Dr. Faisal."

3

judgment against the Defendants. I also recommend granting Plaintiff's motion to dismiss the "John Doe" Defendant from this case.

### B. Plaintiff's Prior Cases

Before turning to the pending motions in the above-captioned case, the undersigned takes judicial notice of the fact that Plaintiff has filed at least one prior federal case in which he asserted an Eighth Amendment "excessive force" claim based upon the same beating that he alleges took place at SOCF upon Plaintiff's transfer from ToCI.[3] Additionally, Plaintiff has acknowledged at least one prior suit in state court on closely related claims. Moreover, in the course of the present review of this case, the undersigned observes that Plaintiff has made similar allegations in several other federal cases.[4]

In Southern District of Ohio Case No. 1:15-cv-595, Magistrate Judge Karen LItkovitz filed an R&R on October 20, 2015, in which she recommended dismissal under § 1915(g) of a variety of claims essentially challenging the conditions of his confinement at ToCI in August 2014, his subsequent transfer from ToCI to SOCF for a period of time, his mistreatment by SOCF staff while he was incarcerated there, and his continued incarceration…." (*See id*, Doc. 6, R&R at PageID 20. *see also* Doc. 1, Complaint at

---

[3]The undersigned discovered the similarity of the allegations in this prior case during the course of the Court's more complete review following initial screening. Because the prior similar case was not referenced in either of my prior R&Rs, the undersigned assumes that the presiding district judge also may have been unaware of that case.

[4]*See, e.g.*, Northern District of Ohio Case No. 3:15-cv-2256 (Opinion and Order of 2/11/16, denying *in forma pauperis* motion and dismissing case involving similar claims); *see also* Northern District of Ohio Case No. 3:16-cv-2168 (Order of 11/17/16 dismissing case as barred by "three strikes" rule and as duplicative of Case No. 16-cv-2109, alleging that Plaintiff has been assaulted, pulled from his wheelchair, thrown to the floor, punched and kicked upon transfer to LCCC, with property unlawfully taken. Additional allegations that his wheelchair was taken and that he has not received medical treatment).

PageID 5, wherein Plaintiff alleged he was "brutally beat on arrival [to SOCF] by several staff members"). In Case No. 1:15-cv-595, U.S. District Judge Black largely adopted that R&R, agreeing that Plaintiff's prior "strikes" prevented Plaintiff from obtaining pauper status in this Court for his allegations of abuse upon transfer to SOCF.[5] After Plaintiff failed to pay the full filing fee in that case, his claims were dismissed for want of prosecution. (Doc. 9, Order filed 12/02/15). Although the Order did not specify the nature of the dismissal, such dismissals are usually without prejudice. *See Brown v. Mills*, 639 F.3d 733, 744 (6th Cir. 2011).

This Court has not previously considered whether a claim that has been previously dismissed for failure to prosecute can be re-asserted in a subsequent case in which the Plaintiff newly alleges "imminent danger." Ordinarily, the imminent danger exception to the three-strikes provision of §1915(g) must exist at the time of the complaint's filing. *See Vandiver v. Vasbinder*, 2011 WL 1105652 (6th Cir. 2011). In addition, the complaint must include at least one claim that relates to the allegation of imminent danger. *See Woods v. Crockett-Harris*, Civil Action No. 2:12-cv-231, 2012 WL 5877419 at *3 (S.D. Ohio Nov. 20, 2012) (holding that circumstances of imminent danger that are unrelated to legal claims do not qualify for exception, citing *Pointer v. Marc*, 2011 WL 847012 at*2 (S.D. Ohio March 8, 2011); and *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2nd Cir. 2009)). However, once a prisoner has sufficiently pled

---

[5] Because Plaintiff also had alleged that he "suffer[s] from severe life threatening injuries…and a complete denial of medical aid" at ToCI, Judge Black transferred the "separate and distinct" medical care claims to the Northern District of Ohio, to be opened as a new case filing. (Doc. 8 at 2, PageID 34). Judge Black transferred the claims so that the Northern District of Ohio could determine whether or not Plaintiff would be able to obtain pauper status under the "imminent danger" exception. (Doc. 8 at 3-4). Following transfer, all claims were dismissed by Sr. U.S. District Judge James Carr, after he concluded that Plaintiff had not sufficiently pled "imminent danger," and Plaintiff failed to pay the requisite filing fee after being denied pauper status in that court. (*See* Case No. 3:15-cv-2256, Docs 10-12).

5

imminent danger with a nexus to <u>one</u> of his well-pled claims, "the prisoner may proceed with the entire action*.*" *See Freeman v. Collins*, Case No. 2:08-cv-71, 2011 WL 1397594 at *6 (S.D. Ohio Apr. 12, 2011). In other words, while the Sixth Circuit has not yet addressed the issue, other Courts of Appeals have held that "a prisoner who sufficiently alleges imminent danger as to one claim may proceed on other claims that lack a nexus to imminent danger." *Id.* at *7 (collecting cases from the 3d, 7th, and 9th Circuits); *see also Vandiver v. Prison Health Servs.*, Inc., 727 F.3d 580, 588 (6th Cir. 2013) (noting in dictum that "the Second Circuit has held that once a plaintiff establishes a nexus between one of his claims and the imminent danger he is alleging, he may proceed with his entire action").

In non-exhaustive research on this issue, the undersigned has discovered no case that addresses whether a claim that was previously dismissed for failure to prosecute, after pauper status was denied under §1915(g) a year earlier, may be later resurrected if the prisoner alleges imminent danger in a manner that permits him to escape the three-strike procedural bar. However, because the prior dismissal of Case No. 1:15-cv-595 for failing to pay the full filing fee is presumed to have been without prejudice, it seems likely that the same 8th Amendment claim properly made may be re-asserted in this new case.

**II. Analysis**

I turn now to the dispositive motions filed by Plaintiff in the above-captioned case. Plaintiff's non-dispositive motions are addressed by separate order filed this same day. Many of Plaintiff's filings contain non-linear and only loosely related arguments, and are

6

repetitive. Nevertheless, the undersigned has construed all motions and claims liberally, in accordance with the leeway ordinarily applied to *pro se* filings.

### A. Motion Seeking Dismissal of John Doe (Doc. 24)

On April 17, 2017, Plaintiff filed a motion to dismiss the "John Doe" Defendant, stating that Plaintiff desires to dismiss that Defendant "do [sic] to inability to be discovered." (Doc. 24 at 2). Plaintiff filed a "response" to his own motion on April 24, 2017, reiterating his intention to dismiss John Doe. Plaintiff's motion to voluntarily dismiss this Defendant should be granted.

### B. Motions Seeking Default Judgment (Docs. 20, 22, 23, 35, 36, 38, 39)

Approximately 7-10 of Plaintiff's motions[6] seek default judgment, based upon the failure of some or all of the Defendants to appear. All motions for entry of Default or Default judgment should be denied.

Those Defendants who have been properly served filed an Answer on May 22, 2017. (Doc. 34). Contrary to Plaintiff's apparent belief, that Answer was timely filed. Defendants Ahmed, Workman and Neff have not yet been properly served; therefore, their answer is not yet due, much less overdue. Last but not least, defense counsel has supplied to this Court a copy of the obituary for Defendant Southworth, who died in July 2015. Plaintiff expressly acknowledges the fact of Defendant Southworth's death. Thus, the undersigned recommends that Defendant's *sua sponte* dismissal from this case.

---

[6]Several of Plaintiff's filings contain multi-part motions, such as Docket Entry 20, which contains two motions, and Docket Entry 23, which contains three separate motions. Technically, ten motions are included in seven separate documents.

The above discussion applies to all of the pending motions in which Plaintiff seeks entry of default or default judgment in some form. However, for additional clarity, the undersigned has briefly summarized each of the pending motions to which the above recommendation pertains.

On April 17, 2017, Plaintiff filed a motion to "sever Unidenti. [sic] John Doe", as well as a motion for default judgment against Defendants based upon a failure to appear or file an answer. Plaintiff seeks an award of $80 million dollars and injunctive relief. (Doc. 20). The motion to sever John Doe should be denied insofar as Plaintiff later moved for dismissal of the same John Doe. The motion for default judgment should be denied for the reasons stated.

On the same date, Plaintiff filed a separate motion that was docketed as a "motion to amend/correct," but that actually seeks "default entry & judgment, including initiative to revise the defendants' caption to Erdos, et al., as the replacement of State OH." (Doc. 22). This motion includes a list of somewhat confusing allegations about the "tortfeasors listed in this matter's original complaint" who "have all played part with others not listed herein this matter to evolve this matter in full to a new level. The 'Scooby Doo' mysteries are unveiled." (*Id.* at 1). The motion ends with a "prisoner affidavit" in which Plaintiff appears to be seeking the entry of default judgment against all non-appearing Defendants, as well as an order "to condemn the S.O.C.F. – Southern Ohio Correctional Facility – permanently & prospectively." (Doc. 22 at 4). In addition to recommending the denial of default judgment for the reasons stated, the undersigned declines to revise the caption of this case as the proposed revision is unnecessary.

A third related document, also filed on the same April 17, 2017 date, contains three separate motions. First is a motion for default judgment, which should be denied for the reasons discussed. A second part has been docketed as another "motion to amend/correct" the case caption, which also should be denied as unnecessary. The third part has been docketed as a motion for "mandamus effect." (Doc. 23). This third motion is akin to another motion for entry of default judgment; it specifically seeks "a mandamus affects [sic] ordering the tortfeasors to immediately send me to an Amer. With Dis. Act accessable [sic] prison of equal security, so that Federal regulations are complied with as well as my rights under the U.S. Constitution." (Doc. 23 at 1). Thus, all three portions of this tri-part motion should be denied.

A fourth related motion, filed on May 22, 2017, is captioned "Motion Nunc Pro Tunc Public Officer Capacity /w- Plaintiff's Distinct Motion of Advisory Request to Supplement & Ref. to the Def.'s Wanton Unduly Delay Combined." (Doc. 35). As best the undersigned can determine, this is yet another motion seeking wide-ranging injunctive and substantive relief based upon Defendants' alleged wrongdoing and the failure of a number of Defendants to answer Plaintiff's complaint. Attached to the 9-page single spaced handwritten motion as an exhibit is a "final supplemental affidavit" that is similar to the affidavit contained in Docket Entry 22. (Doc. 35-1).

Of particular note with respect to this motion is the attachment of a copy of an Entry Granting Summary Judgment to the Department of Rehabilitation and Correction in a state court case that Plaintiff filed in the Court of Claims of Ohio, Case No. 2014-00807. (Doc. 35-2). The state court's June 25, 2015 opinion makes abundantly clear that the underlying lawsuit was based upon much of the same conduct of which Plaintiff

9

complains in this federal case.[7] (*Id.*) The state court determined on the evidence presented that there were no disputed issues of material fact.[8]

> The uncontroverted affidavits and authenticated documents provided by defendant demonstrate that plaintiff cannot prevail on his claim that officers used excessive force against him on September 23, 2014, Furthermore, reasonable minds can only conclude from Dr. Fiasal's averments that plaintiff has not been denied a wheelchair, and that, rather than denying plaintiff pain medication, Dr. Faisal actually arranged for plaintiff to undergo a test that is required under defendant's medical policies for inmates to receive Neurontin, but plaintiff refused to have the test performed and this is the reason why he has not ben prescribed Neurontin.

(Doc. 35-2 at 6, PageID 197).

On May 30, 2017, Plaintiff filed another motion seeking "relief from an (Doc. #32) Order & Motion for Judgment Pursuant Fed. R. Civ. P. 81(b) Mandamus Relief." (Doc. 36). The Order from which Plaintiff apparently seeks "relief" is this Court's directive to the Defendants to provide additional information for purposes of serving the remaining Defendants. There is no cause to grant Plaintiff relief from that order. Unless Plaintiff is willing to voluntarily dismiss all un-served Defendants (which his multiple motions for default judgment confirm that he is not), service must be perfected in order for this case to proceed. In the same motion, Plaintiff again complains about the conditions in which he is confined and seeks substantive relief, based in part upon what

---

[7]In *McDougald v. Ahmad*, Civil Case No. 1:16-cv-500, the undersigned recommended granting the Defendants' motion to dismiss Plaintiff's claims on grounds that the prisoner plaintiff had waived § 1983 claims by first seeking relief in the Court of Claims. See generally Doc. 27, R&R filed on April 26, 2017; *see also Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946 (6th Cir. 1987) *(en banc)*, *cert. denied*, 487 U.S. 1204 (1998). The R&R in Case No. 1:16-cv-500 remains pending before the presiding district judge.

[8]Aside from the potential issue of waiver addressed in footnote 7 above, it remains unclear whether the state court's findings and judgment would have any estoppel effect with respect to this federal case.

Plaintiff believes is Defendants "purposely fail[ing] to appear." (Doc. 36 at 4). Again, the motion should be denied.

On June 2, 2017, Plaintiff filed three more motions that either seek entry of default judgment or closely relate to that relief. The first is an "application to Clerk for entry of default against All Defendants" (Doc. 37). The second is a "motion to strike answer to complaint." (Doc. 38).[9] The third is a "motion supplemental for default judgement [sic] with Brandeis Brief Attached re Application to enter Default." (Doc. 39). None of the three motions have merit for the reasons previously stated. The Answers filed by the Defendants to date have been timely based upon the date of service. The other Defendants have not yet been served, so no Answer is yet due.

### III. Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Defendant Southworth should be dismissed *sua sponte* based upon his death in July 2015;
2. Plaintiff's motion to dismiss the Defendant previously identified as John Doe (Doc. 24) should be GRANTED;
3. All of Plaintiff's motions seeking to amend the caption of the docket of this case, and/or for entry of default judgment or other substantive relief against any and all Defendants (Docs. 20, 22, 23, 35, 36, 38, 39) should be DENIED in full, including the multi-part portions of those motions.

---

[9]Though docketed as stated, the full caption of this motion reads "Obviated Estopple Pursuant Def.'s unduly delay noticed in array of filings – by thine court and the Plaintiff here – in motion to strike [late] scandalous answer filed by (Doc. #34) Dfen. & Recieved the day after mailing relief of Order Motion 9concerning Doc. #32) by Plaintiff Foster [sic]."

11

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER FOSTER, | Case No. 1:16-cv-920 |
| Plaintiff, | Black, J.<br>Bowman, M.J. |
| v. | |
| STATE OF OHIO, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).