# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHRISTOPHER FOSTER,                                    Case No. 1:16-cv-920

        Plaintiff,                                    Black, J.
                                                       Bowman, M.J.

    v.

STATE OF OHIO, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

Plaintiff is a prolific prisoner litigant, filing multiple motions in numerous cases in the state and federal courts.[1] This Report and Recommendation ("R&R") addresses three dispositive matters in the above-captioned case: (1) Defendants' motion for judgment on the pleadings (Doc. 80); (2) Plaintiff's motion for reconsideration or Relief of Order on Issues of Injunctive Relief and Temporary Restraining Order (Doc. 86); and (3) Plaintiff's Motion to Amend/Correct Complaint (Doc. 94). Seven additional non-dispositive matters have been addressed by separate Order filed this same day.

---

[1]*See, e.g.,* Southern District of Ohio Case Nos: 1:14-cv-617; 1:14-cv-668; 1:14-cv-642; 1:15-cv-595; 1:15-cv-713; 1:16-cv-835;1:16-cv-846 and Northern District of Ohio Case Nos. 3:15-cv-404; 3:16-cv-658; 3:16-cv-2109; 3:16-cv-2168; 3:15-cv-2256; 3:16-cv-476; 3:16-cv-1535; 316-cv-1715. In addition, Plaintiff has filed at least fourteen cases in the Ohio Court of Claims alone, plus many additional cases in the Franklin Court of Common Pleas. Plaintiff has been sued by the Ohio Attorney General under Ohio Revised Code R.C. §2323.52 for his vexatious litigation. *See Ohio State Attorney General Mike Dewine v. Christopher Foster,* Case No. 16-cv-2732. Plaintiff also has litigated five actions in the Ohio Supreme Court. (Doc. 80 at 5-6). Not only has Plaintiff filed a large number of cases, but he inundates the courts with motions in the cases that he pursues. In the undersigned's last R&R, I noted that Plaintiff had filed at least 29 motions in this case alone, (see Doc. 78, n.1). As of this writing, that number that has risen to 38 motions in this record alone, not including multiple non-motion filings. (*See e.g.*, Docs. 76, 86, 87, 88, 92, 93, 94, 95, 97). In short, Plaintiff's filings consume a disproportionately large amount of this Court's judicial resources as compared to other pro se or even the prisoner litigant population at large.

## I. Background

Plaintiff, who is currently incarcerated at the Southern Correctional Facility (SOCF), filed this §1983 action alleging violations of his civil rights while he was incarcerated at the Toledo Correctional Institution (ToCI), as well as after his transfer to SOCF. Plaintiff previously had filed three or more cases that had been dismissed at the screening stage, prompting initial review under 28 U.S.C. § 1915(g), a "three strikes" provision included in the Prison Litigation Reform Act ("PLRA") intended to prevent frivolous and/or vexatious prisoner litigation.

Plaintiff's current complaint alleges that while at ToCI, Plaintiff suffered poor treatment, including but not limited to the improper disposal of his legal work and other property. In September 2014, he was transferred to SOCF, where Plaintiff alleges that he was subjected to racist and derogatory remarks, and was physically assaulted by a number of officers, including Defendants Rankin, Southworth, Neff, Parish, and John Doe, and possibly Workman. Plaintiff alleges that Defendant "Dr. Ahmed Fiscal" denied him medical care after the assault, and continues to deny him care for a skin disease. The original complaint contains additional allegations regarding Plaintiff's conditions of confinement, as well as an attack on Plaintiff's conviction and sentence. Plaintiff's original complaint identified the following Defendants: the State of Ohio, Toledo Correctional Institution (ToCI), SOCF, and "several State actors" including Warden John Coleman, a group of unnamed ToCI correctional officers, Lt. Beiderman, Kelly Robertson, a group of unnamed Caucasian correctional officers, CO Southworth, Rardin, Neff, T. Parish, Cpt. Workman, Roger Wilson, Dr. Ahmed Fiscal (later corrected to Dr. Faisal Ahmed), DWSS Cadogan, DWO Cool, WMA Davis, Warden Morgan, CO

Steve Carter, Major Warren, Ms. Aldridge, Sgt. Bear, Sgt. Felts, O'Connor, Oppy, Hammerick, Lt. Phillips, Nurse Coons, Danhoff, Ohio Attorney General Mike DeWine, Assistant Attorney General Christopher Bagi, DWO Bowerman, Lt. Copley, David Bobby, and Warden Erdos. (Docs. 1, 2).

Based upon Plaintiff's litigation history and number of prior dismissals, the undersigned filed an R&R on October 11, 2016 recommending that Plaintiff's motion to proceed *in forma pauperis* in this case be denied, and that this case be dismissed unless Plaintiff immediately paid the full filing fee. The relevant statutory provision, 28 U.S.C. § 1915(g), prohibits frequent filers with a similar history of dismissals from "proceeding IFP 'unless the prisoner is under **imminent danger** of serious physical injury.'" *Bruce v. Samuels*, 136 S. Ct. 627, 630 (2016) (citing 28 U.S.C. § 1915(g), emphasis added).

On December 5, the presiding district judge rejected the October 11, 2016 R&R, concluding that Plaintiff had adequately alleged "imminent danger" in a manner that permitted him to file this lawsuit without prepayment of a filing fee, based upon four separate documents that were not before the undersigned at initial screening, but instead were filed in response to the R&R. (Doc. 9 at 3). The Court liberally construed the collection of documents as objections, since "[e]ach of these filings attempt to address the …recommendation that Plaintiff be denied *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g)." (Doc. 9 at 1-2). The Court specifically cited new allegations that "[s]taff members have been planning their next attack on me," and that Plaintiff does not "know when the C/Os that once attacked me previously or Bare [sic], the sergeant that threatens to attack me regularly here is going to act." (*Id.*, citing Docs.

7 and 8), as well as Plaintiff's reference to being denied medical treatment for a "skin disease." (*Id.*)

Based upon the rejection of the R&R dismissing this lawsuit under 28 U.S.C. §1915(g), the undersigned re-screened Plaintiff's initial complaint under 28 U.S.C. §1915(e). In addition, the undersigned screened the allegations in a construed amendment to the complaint that Plaintiff filed on January 27, 2017. (*See* Doc. 10). Pursuant to a second R&R filed on February 28, 2017 and adopted by the Court on April 18, 2017, the Court dismissed most claims and defendants, but permitted four specific claims to go forward, against Defendants Rardin, Southworth, Neff, Parish, John Doe, Workman, Warden Erdos, Dyer, Bear, Dyer, and Dr. Ahmed:

> (1) Eighth Amendment excessive force claims against defendants Rardin, Southworth, Neff, Parish, John Doe, and Workman based on plaintiff's allegation that these officers attacked him upon his arrival to SOCF; (2) excessive force claim against Sgt. Bear based on the January 17, 2017 attack; (3) deliberate indifference claim against Dr. [Faisal Ahmed]; and (4) conditions of confinement claims at SOCF, including plaintiff's claims regarding wheelchair accessibility, against defendants Warden Erdos, Dyer, and Bear.

(Doc. 12 at 12, PageID 62; adopted at Doc. 25).

It is worth noting that after service of the complaint/supplemental complaint on the four referenced claims, the undersigned discovered that Plaintiff has previously filed other complaints that contain remarkably similar allegations, one or more of which complaints also were previously dismissed based upon the referenced "three strikes" provision and/or for failure to pay the requisite filing fee.[2] As the undersigned previously

---

[2] *In Foster v. Ohio*, Case No. 1:15-cv-595, 2015 WL 6542408 (S.D. Ohio Oct. 29, 2015), Magistrate Judge Litkovitz recommended the dismissal of an earlier complaint by Plaintiff that contained similar allegations. However, the undersigned did not become aware of the similarity until subsequent review of this complaint and comparison with Plaintiff's past filings. In Case No. 1:15-cv-595, Judge Black severed claims against the ToCI Defendants and transferred them to the Northern District of Ohio. However, upon

explained, however, it is unclear whether any prior dismissal(s) would bar the instant suit, in light of Plaintiff's new assertion of "imminent danger." (*See* Doc. 43 at 6, PageID 246).

In any event, other than the four referenced claims, the Court found that "the remaining allegations in the complaint fail to state a claim upon which relief may be granted" and therefore recommended full dismissal of "the remainder of the complaint." (Doc. 12 at 12). The Court determined that Plaintiff could not recover monetary damages because the State of Ohio enjoys Eleventh Amendment immunity. The Court also dismissed all claims against ToCI, SOCF and the Ohio Department of Rehabilitation and Correction, since only "a person" acting under color of state law is subject to suit or liability under 42 U.S.C. §1983. Additionally, the Court dismissed Plaintiff's conspiracy claims as insufficient to state a claim upon which relief may be granted. The Court dismissed Plaintiff's claims relating to the failure to investigate and/or respond to his grievances as insufficient to state a claim under § 1983. The Court held that Plaintiff also failed to state a claim upon which relief may be granted with respect to the alleged destruction of his personal property, whether that claim was brought as a due process claim or, with respect to the alleged destruction of his legal materials, as a First Amendment right of access to the courts. The Court held that Plaintiff could not challenge the validity of his criminal conviction or continued incarceration in this civil rights case. The Court also dismissed any claims seeking to

---

initial screening in that district, the Northern District also dismissed on the basis of the three strikes provision. *See e.g., Foster v. Ohio,* Case No. 3:15-cv-2256, 2016 WL 537475 (N.D. Ohio Feb. 11, 2016). *See also, generally,* Northern District of Ohio Case No. 3:16-cv-2168 (Order of 11/17/16 dismissing case as barred by three strikes rule and as duplicative of Case No. 3:16-cv-2109, alleging that Plaintiff has been assaulted, pulled from his wheelchair, thrown to the floor, punched and kicked upon transfer to LCCC, with property unlawfully taken, with additional allegations that his wheelchair was taken and that he has not received medical treatment).

hold defendants liable for threats and verbal harassment, since such allegations are not sufficient to state a viable claim under the Eighth Amendment. Finally, the Court dismissed a long list of "conclusory" allegations against an even longer list of would-be individual defendants: Steve Carter, Major Warren, Roger Wilson, O'Connor, Oppy, Hammerick, Lt. Phillips, Coons, Danhoff, John Doe, Nurse Koons, Mike DeWine, Christopher Bagi, D.W.O. Bowerman, Lt. Copley, and David Bobby. (*See* Doc. 12. at 11-12).

Initially, service was perfected only on Defendants Rardin, Parish, Bear, Erdos and Dyer. Defendants John Doe and Southworth (who died in 2014) were dismissed. Multiple motions filed by Plaintiff seeking default judgments against various Defendants based upon their alleged failures to answer or otherwise respond to Plaintiff's complaint were denied. (Docs. 43, 56). Summons was later issued to Defendants: Neff, Workman, and Dr. Ahmed. (Docs. 43, 44, 45). All Defendants then filed answers and/or amended answers, (Docs. 62, 63, 65, 66, 67), and moved for judgment on the pleadings on November 28, 2017.

Pursuant to the Court's calendar order, discovery was set to conclude on March 15, 2018, with all dispositive motions to be filed on or before May 15, 2018 (Doc. 52). However, discovery appears to be incomplete, as Defendants filed a motion to stay all discovery shortly after they moved for judgment on the pleadings. (Doc. 84).

Throughout this case, Plaintiff has kept up a frenetic pace of motion practice. In an Opinion and Order filed on November 2, 2017, the undersigned warned Plaintiff that future repetitive and frivolous motions would be summarily denied:

> Due to the number of repetitive and procedurally improper motions filed by Plaintiff to date, requiring the significant expenditure of judicial resources,

> Plaintiff is STRONGLY CAUTIONED to avoid filing additional frivolous motions prior to the close of discovery on March 15, 2018. If Plaintiff files additional repetitive motions they will be summarily denied without further analysis.

(Doc. 77 at 11). In an R&R filed on the same date, the undersigned also denied five dispositive motions filed by Plaintiff: (1) two motions for a preliminary injunction and temporary restraining order; (2) Plaintiff's application for entry of default; (3) Plaintiff's motion for default judgment against Dr. Ahmed; (3) Plaintiff's multi-part motion to strike and to order the state to cease torture; and (4) Plaintiff's motion for judgment on the pleadings.

Plaintiff filed multiple documents that were liberally construed by the presiding district judge as objections (and supplements to objections), all of which the Court found to be "without merit." (Doc. 81 at 1, n.1). In overruling Plaintiff's objections, the presiding district judge also cautioned Plaintiff, warning him that his filings have been in violation of Fed. R. Civ. P. 11, because they "consist largely of foul, repetitive, and completely unsubstantiated denigrations of the Magistrate Judge's impartiality and character," and placing him on notice that "[f]urther such behavior will not be tolerated" and "will result in sanctions, potentially including the summary dismissal of this case." (Doc. 81 at 2, n.1, PageID 502).

Having related the relevant procedural background of this case, the undersigned turns now to the pending dispositive motions, beginning with Defendants' motion for judgment on the pleadings.

## II. Pending Dispositive Motions

### A.    Defendants' Motion for Judgment on the Pleadings (Doc. 80)

Defendants assert that they are entitled to judgment under Rule 12(c), Fed. R. Civ. P. on grounds that in October 2014, Plaintiff previously filed suit in the Court of Claims based on the same core events alleged in his federal lawsuit – that the Defendants used excessive force against him in September 2014 when he arrived at SOCF.  Public records from the Court of Claims confirm that Plaintiff filed a complaint in that court on October 7, 2014, in which he alleged that the ODRC failed to protect him and engaged in a physical assault against him, when multiple officers beat him shortly after his arrival at SOCF. *See Foster v. Ohio Dept. of Rehab and Correction, et al.*, (Ohio Court of Claims No. 2014-00807JD). In the same complaint, Plaintiff alleged that Dr. Ahmed had engaged in abuse by discontinuing pain pills and Plaintiff's wheelchair,[3] generally denying Plaintiff access to a wheelchair, and engaging in medical malpractice. Plaintiff further complained that Dr. Ahmed and the ODRC were in violation of the Americans With Disability Act, as well as in violation of institutional rules and policies based upon the conditions of confinement provided for mentally ill inmates, including a lack of medical treatment, lack of stimulation, isolation, lack of recreation, extreme temperatures, and similar conditions-of-confinement complaints.  Plaintiff included a statement in his Court of Claims complaint that he "can go to Federal Court and now

---

[3]Plaintiff alleges that he was previously shot multiple times, and that he requires access to a wheelchair at all times for mobility.  Defendants dispute that representation, and records suggest that Plaintiff has been prescribed the use of a wheelchair at SOCF only when he is required to walk long distances.  In an R&R filed on November 2, 2017, the undersigned discussed at some length the strong inference from the complaint and other documents filed by Plaintiff that he "has not necessarily been denied <u>all</u> [medical care, but rather,…disputes the adequacy of care provided…." (Doc. 78 at 11-12, emphasis original, citing multiple records and inconsistencies in Plaintiff's statements, and pointing out that medical malpractice is insufficient to show a constitutional violation).

prove you are doing this with deliberate indifference to serious medical needs next year." *Id.*

Defendants' motion argues that all of Plaintiff's claims in this federal case are barred by the *Leaman* doctrine and/or by *res judicata*. Alternatively, Defendants argue that they are entitled to qualified immunity. As explained below, the undersigned concludes that Defendants are entitled to partial judgment on two of the four claims delineated in this case.

### 1. Standard of Review

A district court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir.2001). In considering a motion to dismiss, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir.2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted).

### 2. The *Leaman* Doctrine Bars Two Claims Regarding Events of September 2014 and Claims Against Dr. Ahmed

It is well established that states are entitled to sovereign immunity from suit, absent an express waiver of that immunity. "The Ohio Court of Claims Act waives the state's sovereign immunity and declares that the state consents to be sued in the Court

of Claims." *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987)(en banc), *cert. denied*, 487 U.S. 1205 (1998).  In relevant part, Ohio R.C. § 2743.02(A)(1) provides:

> Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any [state] officer or employee, as defined in section 109.36 of the Revised Code.   The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Plaintiff's 2014 complaint in the Ohio Court of Claims contained very similar allegations and claims against the Ohio Department of Rehabilitation and Correction ("ODRC") and other institutional Defendants.   The Ohio Court of Claims case was decided on the merits on June 25, 2015, when Defendants were granted summary judgment in their favor.   (*See* Ohio Court of Claims, Case 2014-00807JD, Entry Granting Defendants' Motion for Summary Judgment).

In a 27-page memorandum in opposition to Defendants' motion, Plaintiff argues that the difference in the legal basis for the claims (federal law versus state law) is sufficient to permit this otherwise-repetitive federal suit to proceed.   However, in *Leaman,* the Sixth Circuit Court of Appeals held that neither the legal basis for the claim, nor the difference in the identity of the defendants (individuals versus the ODRC) is sufficient to escape the wavier.   Instead, filing suit in the Ohio Court of Claims bars any later federal suit seeking monetary damages for the same conduct against an individual state officer or employee.   The *Leaman* court explained that O.R.C. § 2743.02(A)(1) constitutes "Ohio's statutory offer to subject itself to suit in the Court of Claims in exchange for a waiver of claims against individual state officials."   *Id.* at 957.

Thus, Plaintiff's decision to sue the ODRC in the Ohio Court of Claims constitutes a waiver of his right to sue any of the identified Defendants in this federal court under §1983 for the same conduct. *Id.* "Where a claimant elects to sue the state in the Court of Claims, in other words, the state's employees are given an affirmative defense which the federal court has both the jurisdiction and the duty to recognize." *Id.* at 954; *see also Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 460 (6th Cir. 1998) (dismissing a plaintiff's request for monetary relief when she filed an identical complaint in the Ohio Court of Claims after initiating a federal lawsuit); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995) (same).

Plaintiff next argues that *Leaman* should not bar his federal claims because his prior Court of Claims complaint presented claims that were limited in scope to the events of September 2014. Although Plaintiff does not deny the substantial overlap between the Court of Claims complaint and the claims asserted in this federal lawsuit, he argues that he included in his federal lawsuit additional allegations based upon the "28 months['] worth of implicated United States violations done by State actors…." (Doc. 82 at 3).

While it is true that Plaintiff has included many allegations beyond those included in the complaint he filed in the Court of Claims, most of those allegations, defendants, and claims were dismissed on initial screening by this Court. Thus, to determine whether the *Leaman* doctrine bars all claims that remain in this case, the undersigned must re-examine the original complaint (Doc. 1), as supplemented (Doc. 10), the R&R filed on February 28, 2017 (Doc. 12), and the Court's Order adopting that R&R (Doc. 18).

Pursuant to Plaintiff's federal complaint as amended, Plaintiff was permitted to proceed on only four claims: (1) an Eighth Amendment excessive force claim based upon allegations that officers attacked Plaintiff upon his arrival at SOCF (Doc. 1); (2) an excessive force claim against Defendant Sgt. Bear based upon a separate incident that allegedly occurred on January 17 or 19, 2017[4] that was detailed in the "supplement" to Plaintiff's complaint (Doc. 10); (3) a deliberate indifference claim against Dr. Ahmed (Doc. 1); and (4) conditions of confinement claims against Defendants Warden Erdos, Dyer, and Bear at SOCF, including Plaintiff's claims regarding wheelchair accessibility (Doc. 10).

Allegations relating to the first federal claim are nearly identical to those presented in the complaint Plaintiff previously filed in the Court of Claims. Likewise, close examination of the third claim (against Dr. Ahmed) confirms that the allegations alleged herein and in the prior state court action are virtually the same. In his federal complaint, Plaintiff alleges that Dr. Ahmed is liable under §1983 for failing to adequately treat Plaintiff for his chronic medical condition, for failing to assess his pre-existing medical condition upon his transfer, for failing to assess Plaintiff's injuries after the alleged attack upon his arrival at SOCF, and for discontinuing previously prescribed treatment. (Doc. 1 at 2, PageID 2). The only other allegation against Dr. Ahmed relates to the same time period, shortly after Plaintiff's arrival at SOCF, and states: "I saw Dr. Ahmed one more time and he threatened my life with physical harm by brutality and denied medical aid again. **I signed a paper that I refused to see him again**." (Doc. 1 at 3, PageID 3, emphasis added). Plaintiff also generally alleges (notably <u>without</u>

---

[4]Although this Court referenced the incident as occurring on January 17, 2017, Plaintiff's amended/supplemental complaint appears to identify the date as January 19, 2017. Any minor typographical error in this Court's prior reference to the date is irrelevant to the present analysis.

reference to Dr. Ahmed from whom he refused all treatment) that he currently is "not receiving medical treatment or aid," is "in severe chronic pain," and that his "skin disease is not being treated." (Doc. 1 at 5, PageID 5).

Thus, on close review, the first and third claims previously deemed to survive screening under 28 U.S.C. §1915(e) in Plaintiff's federal complaint are essentially the same as the allegations and claims included in the complaint that Plaintiff previously filed in the Court of Claims. As a result, those two claims arguably are barred under *Leaman*.

By contrast, Plaintiff is correct that the second and fourth claims permitted to proceed in this Court were not included in his prior Court of Claims case, but instead encompass a much later January 2017 time period. For example, Plaintiff's second claim in this Court alleges a fairly straightforward Eighth Amendment claim against Defendant Bear, arising out of a January 2017 incident in which Bear allegedly sprayed Plaintiff with pepper spray. The fourth claim, concerning "conditions of confinement," was permitted to proceed only against Defendants Erdos, Dyer, and Bear, and referenced Plaintiff's complaint about "wheelchair accessibility" as the primary condition in issue. (Doc. 25 at 2, PageID 129).

In the prior R&R that delineated which claims were permitted to proceed, the undersigned first discussed separate "conditions of confinement" allegations that when he arrived at SOCF, Plaintiff had been placed in a cell that was not wheelchair accessible, with a toilet he could not access, and that he was being dragged up and down the stairs whenever he entered or left the unit. (Doc. 12 at 4 and n.1, citing Doc. 1 at 3). However, none of the "condition of confinement" allegations pertain to any action

or inaction taken by either Defendants Dyer or Bear, neither of whom were even mentioned in Plaintiff's original complaint. (Doc. 1). Although Defendant Erdos was briefly referenced in the original complaint, Plaintiff claimed that he was liable solely in his supervisory role; there are no allegations that Plaintiff made any personal complaint to Defendant Erdos or that the Warden had any other personal involvement in SOCF's alleged failure to provide adequate living conditions or to comply with the Americans With Disabilities Act.[5] Instead, the sole reference to Warden Erdos in the original complaint reads as follows:

> Now I am denied wheelchair access still but not allowed to use it except for going to shower. I was in a cell I could not even access bed. I lost it. I was denied shower. I lost it. Warden Erdos has done nothing to rectify as of today still illegally detaining me and denying me A.D.A. accessibility. According to BCI I am not even supposed to be in prison. According to known law as well.

(Doc. 1 at 4, PageID 4).[6]

In contrast to the relative paucity of "conditions of confinement" allegations against Warden Erdos and complete absence of any reference to Dyer and Bear in the original complaint, Plaintiff's "supplement" to his complaint (Doc. 10) fleshes out his key allegations against Defendants Erdos, Dyer, and Bear. In that supplement, Plaintiff sets forth conspiracy theories regarding Plaintiff's then-ongoing habeas corpus cases.[7]

---

[5]Despite this Court determining that a limited conditions-of-confinement claim under the Eighth Amendment could proceed against three Defendants, no separate claim under the ADA was permitted to proceed.

[6]Plaintiff also alleges in his original complaint that shortly after he filed a state civil suit, on October 23, 2014, he was provided a wheelchair and an accessible cell to "cover it up." (Doc. 12 at 5, n.1, citing Doc. 1 at PageID 3). The R&R that defined Plaintiff's claims also discussed Plaintiff's general complaints about the conditions of his confinement and allegations that various individuals (none of which remain as Defendants) were "all in conspiracy throughout the whole thing." (Doc. 12 at 5, PageID 55, citing Doc. 1 at PageID 3). None of Plaintiff's "conspiracy" claims were permitted to proceed, nor were any other "conditions of confinement" claims permitted to proceed. (Doc 12 at PageID 57-58).

[7]See, e.g., Case No. 1:15-cv-713 and Case No. 1:16-cv-846. The two habeas cases were consolidated, and Petitioner Foster's claims ultimately were dismissed on the merits on July 24, 2017.

Plaintiff next alleges that unnamed prison officials are imposing non-standard restrictions on him, restricting his access to soap and hygiene products that "need to be used and returned [to officers] right after use." (Doc. 10 at 2, PageID 40). Although this Court previously determined that none of those allegations stated any claim, they are referenced to provide context for the following allegations against Defendants Bear and Dyer:

> But I am negative and in full resistance of their efforts. The Sgt's Bear and Felts mentioned in the complaint of this litigation were notified that [habeas case] would have specific requirements on the 27th of January. So they continued to send staff to go to the cell I was housed in to harass me to induce panic. On the (19th) nineteen at 6 am Thursday of January last week, I requested for my hygiene so that I could go take a shower. I was told that I cannot use toothbrush, toothpaste, soap, deodorant etc. and at that time I requested to see a Lt., [who] came shortly after. Lt. Dyer made disrespectful remarks while walking past the cell and bluntly denying me my property and hygiene. I was distraught, minutes later Sgt. Bear came through the gate directly to the bars of the cell I was housed. He replied, "Fuck you Bitch! We not letting you do shit motherfucker." He then began to dispense mace from a very large "fogger can" into my face. I saw a battery nearest me and threw it at him to make him stop.
>
> Sgt. Bear left for a few minutes and returned, immediately with another can of mace aimed directly at me in the cell, saying ["]cuff the fuck up bitch, so I can put you out of your misery." Before I could get a word out of my mouth he emptied the can drowning me in mace. I refused to cuff, as I continued to try getting the mace out of my face. The entire unit of celled (celled) inmates began to go bonkers at the CO's. Then a group of CO's came with Lt. Dyer, the guy I described that came before "Bare." They had a big gun, vests, shield, helmets, etcetera, ordering me to cuff up. Once I wheeled over to them in my wheelchair and cuffed up, they opened the cell, wheeled me to the steps of the unit & grabbed me out of the wheelchair spontaneously, dragging me up the stairs. (Both my hands and ankles shackled).
>
> They wheeled me to K-2, another unit (from J-3 cell 3 handicap cell). Entering K-2, they (with help of D. Smith) pulled me out of the wheelchair spontaneously and dragged me down the ste[ps], this time making sure my feet hit every step, all the way to cell 6. In this cell 6 of the multiple tortfeasors, stripped me naked and after discarding my boxers, socks, thermals etc., gave me a jail shirt, and jail pants. I was left in the cell with

no wheelchair or Amer. With Dis. Act, accessibility (nowhere in this unit, nor my property) … I sat on the steel bunk only to observe the blood all over the floor walls and sink of this disgusting condemned moldy cell….

I just received an envelope and some paper/pen from a neighboring inmate to write this [supplement to the complaint]. I am in a cell (cell 6 – K-2). No wheelchair, or accessibility, confined strictly to a bed. I was given nothing but a mattress (dirty and old) and one sheet, one blanket, my undergarments, legal work, property, wheelchair, etcetera are at (?) large. I am not allowed to access phone, commissary, a shower, or medical needs for my skin disease.

I am sure that it will get worse as they have informed me they are going to destroy me after they finish blocking my legal work…. I will make a way to contact the Court, yet I am sure that Sgt. Bare, Sgt. Tacket, Felts, Warden Erdos, etcetera, are going to do everything they can to kill me or try to, I have not even had a shower since January 18th, 2011.[8]

(Doc. 10 at 2-3, PageID 40-42).

This Court's prior Order and R&R clarified that none of Plaintiff's allegations of threats and verbal harassment or verbal abuse by Bear or Dyer (or anyone else) stated any claim, (Doc. 12 at 11, PageID 61), and that his allegations concerning his "property" or "legal work" also failed to state any claim. However, the R&R concluded that Plaintiff's allegations against Defendants Erdos, Bear, and Dyer concerning his conditions of confinement could proceed, focusing specifically on "wheelchair accessibility" and implicitly on Plaintiff's allegations that Bear and Dyer placed him in an inaccessible and filthy cell (identified as the K-2 unit, cell 6) as punishment after the January 2017 incident.

In summary, comparison of Plaintiff's prior Court of Claims complaint and the complaint filed in this Court confirms that the first and third claims identified by this

---

[8]Upon re-inspection of Plaintiff's handwriting, it appears Plaintiff may be alleging he was denied a shower for one week (since January 18, **2017** rather than January 18, **2011** as originally interpreted by this Court).

Court are essentially identical to those presented in the Court of Claims. Under *Leaman*, then, Plaintiff has arguably waived his first and third claims by filing the prior lawsuit. By contrast, the second and fourth claims permitted to proceed against Defendants Bear, Erdos, and Dyer are distinct and unrelated to Plaintiff's prior state court case. Specifically, the latter two claims both relate to events that occurred on or after January 17, 2017.

The only remaining issue is to determine whether Plaintiff Foster should be held to the *Leaman* waiver, in light of his *pro se* status. As the district court explained in *Williams v. Smith*, 2006 WL 2192470, at *10 (S.D.Ohio, 2006):

> Before the Court may grant the motion to dismiss….federal claims against the Individual Defendants on waiver grounds, the Sixth Circuit implicitly requires the Court to make a finding as to whether Williams "knowingly, voluntarily, and intentionally" waived his right to proceed in federal court against the Individual Defendants.

*Id.*; *see also Smith v. Duncan,* 98 F.3d 1342 (6th Cir.1996) (unpublished, text available at 1996 WL 583413, at *1, finding, based on the lack of contrary evidence presented by defendants that *pro se* prisoner plaintiff's voluntary dismissal of his state court suit showed that he was not aware of the waiver).[9]  *Kajfasz v. Haviland,* No. 01-3606, 55 Fed. Appx. 719, 721-722 (6th Cir. Jan. 15, 2003) (remanding for a determination of whether plaintiff acted knowingly, intelligently, and voluntarily when she filed suit in the Court of Claims).

---

[9]*Smith v. Duncan*, like this case, involved a plaintiff's allegations of deliberate indifference by a prison doctor. Although the Sixth Circuit did not uphold the application of the statutory waiver, the court nevertheless affirmed the dismissal of Smith's complaint on grounds that Smith had not alleged more than negligence, which is insufficient to state an Eighth Amendment claim. Arguably, Plaintiff herein also has alleged no more than negligence as to Defendant Ahmed – the claim articulated in his complaint in the Court of Claims.

In opposition to application of the waiver, Plaintiff asserts that the waiver was not knowing and voluntary because Court of Claims No. 2014-807 was the very first complaint that he ever filed in that *particular* Ohio court, and another (unidentified) inmate helped him prepare the complaint. (Doc. 82 at 6). He argues that a statement in the Court of Claims complaint that he "can go to Federal Court and now prove you are doing this with deliberate indifference to serious medical needs next year," undermines any claim of a knowing and intelligent waiver. (*See* Complaint, Court of Claims; Doc. 82 at 6-7).

However, by the time Plaintiff filed his "first" (of fourteen) Court of Claims cases, he had filed multiple cases in other state courts, and had appealed at least three to the Ohio Supreme Court (Case Nos. 2014-0819, 2014-1294, and 2014-1493). Prior to filing Ohio Court of Claims Case No. 2014-00807JD, Plaintiff also had filed three cases in this federal district court. Although the issue is relatively close, given Plaintiff's extensive litigation history in both Ohio courts and in this federal court, the undersigned concludes that Plaintiff made a knowing, intelligent and voluntary decision to first file his suit in the Ohio Court of Claims, thereby accepting the waiver of his § 1983 claims against the Defendants identified herein. *Accord Brown v. Mason*, 2012 WL 2892036 (S.D. Ohio July 16, 2012) (applying waiver to *pro se* prisoner plaintiff; *Snead v. Mohr*, 2015 WL 1208304 (S.D. Ohio March 16, 2016) (same); *see also McDougald v. Ahmad*, Civil Case No. 1:16-cv-500 (S.D. Ohio April 26, 2017)(Doc. 27, R&R adopted by Order filed 09/8/17). Other courts have applied the waiver against *pro se* prisoner plaintiffs with a less extensive litigation history. *See, e.g. Easley v. Bauer*, Case No. 1:07-cv-37-SJD, 2008 WL 618642, at *1 (S.D. Ohio Feb. 29, 2008) (prisoner plaintiff who had filed up to

ten other *pro se* actions was experienced litigant and waived his federal right of action); *Williams v. Smith*, 2006 WL 2192470 at **10-11 (S.D. Ohio Aug. 1, 2006) (*pro se* plaintiff involved in at least three lawsuits based upon the same alleged facts indicated an "above-average understanding of the law for a *pro se* litigant" and therefore supported application of the waiver).  Like the plaintiff in *Williams*, Foster's complaints have all been properly captioned, organized into short and clear paragraphs, contained requests for appropriate relief, and cited to federal case law. Therefore, the undersigned concludes that Plaintiff has waived his first and third federal claims against the Defendants identified herein.[10]

### 3.  Res Judicata

If a reviewing court were to disagree concerning the application of *Leaman* to bar Plaintiff's first and third claims in this Court, the undersigned alternatively finds that the doctrine of res judicata under Ohio law bars those claims.  In the Court of Claims case, Plaintiff alleged that many correctional officers used excessive force against him between the time he arrived at SOCF on September 23 and September 29, 2014.  He also alleged that individuals including Dr. Ahmed denied him medication, adequate medical treatment, and a wheelchair.  Plaintiff included multiple additional claims concerning the 2014 conditions of his confinement at SOCF.  He similarly describes this federal lawsuit as challenging Defendants' failure to "provide a handicap-accessible cell, wheelchair, pain medication for the Plaintiff or any other proper medical care," and to challenge the decision of Dr. Ahmed to "alter[] my medical care during the months of

---

[10]The undersigned recognizes that the Court of Claims itself, in granting partial judgment to the Defendant ODRC, discussed Plaintiff's Eighth Amendment allegations of deliberate indifference to serious medical needs, but found that it lacked subjected matter jurisdiction over claims arising under 42 U.S.C. § 1983. (Entry filed Jan. 29, 2015).  However, the state court's analysis in this respect has no impact on the effect of *Leaman.*

September and December [2014] purposely maliciously, indicatively [sic] of bad faith or wanton or recklessly by his extreme and outrageous actions…." (Doc. 82 at 10, PageID 513).[11]

Ultimately, the Court of Claims granted summary judgment to ODRC, based on evidentiary exhibits that included Plaintiff's medical records and affidavits prepared by many of the individuals who have been named as Defendants in this federal case. In relevant part, the state court determined:

> The uncontroverted affidavits and authenticated documents provided by defendant demonstrate that plaintiff cannot prevail on his claim that officers used excessive force against him on September 23, 2014. Furthermore, reasonable minds can only conclude from Dr. [Ahmed's] averments that plaintiff has not been denied a wheelchair, and that, rather than denying plaintiff pain medication, Dr. Faisal [Ahmed] actually arranged for plaintiff to undergo a test that is required under defendant's medical policies for inmates to receive Neurontin, but plaintiff refused to have the test performed and this is the reason why he has not been prescribed Neurontin.

> Based upon the foregoing, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.

(*Id.*, Entry of June 25, 2015). The Defendants also had provided affidavit evidence showing that Plaintiff was then housed in a handicap-accessible cell. (*Id.* at 4, ¶13).

"[T]he res judicata effect of state-court decisions in § 1983 actions is a matter of state law." *Young v. City of Radcliff*, 561 F. Supp. 767, 779 (W.D. Ky. 2008)(quoting *Heck v. Humphrey*, 512 U.S. 477, 480 n.2, 114 S.Ct. 2364 (1994)(additional citation omitted)).

> Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action,

---
[11]Plaintiff goes on to reiterate additional claims that he believes are encompassed within his federal lawsuit. However, none of the additional allegations were found to state any claim by this Court on initial screening, and are no longer part of this federal suit.

as to every matter actually litigated, as well as every theory of recovery that could have been presented. *Id.* Under issue preclusion, once an issue actually is determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation. *Mont. v.* \*741 *United States,* 440 U.S. 147, 152–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

*Cedillo v. TransCor America, LLC*, 131 F.Supp.3d 734, 740–41 (M.D.Tenn.,2015).[12]

Because Plaintiff's allegations in the prior Court of Claims suit were adjudicated on the merits and involved privies to the same parties, his attempt to bring the same claims in this federal court under a new legal theory is barred. *McQueen v. Pyles*, 2012 4108011 at \*2 (S.D. Ohio Sept. 18, 2012)(R&R, adopted at 2012 WL 4848910 (S.D. Ohio Oct. 11, 2012)).

Plaintiff's only argument against the application of res judicata is that the Ohio Court of Claims got its facts wrong, because the OCRC allegedly falsified the evidence that it submitted in the prior state court action. The undersigned notes that this Court's own preliminary legal analysis of the lack of likelihood of success on the merits of Plaintiff's case is wholly consistent with the state court's ultimate analysis of the evidence presented and the applicable law. *(See generally*, Doc. 78 at 11-15, citing *Israfil v. Woods*, 2011 WL 8006371, at \*13 (S.D. Ohio 2011), adopted at 2012 WL 2133530 (June 12, 2012)). In any event, Plaintiff may not avoid the application of res judicata by challenging anew in this Court the validity of the underlying evidence relied upon by the state court.[13]

---

[12]The phrase "res judicata" is sometimes used to describe both claim preclusion (traditional res judicata) and issue preclusion (also known as collateral estoppel). *J.Z.G. Res, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996).

[13]Even if it could be considered, the evidence that Plaintiff offers does not refute the state court's determination that Plaintiff received appropriate treatment in 2014. Plaintiff has tendered in this case an (unauthenticated) portion of a November 27, 2017 letter he received from Disability Rights Ohio, in

### 4. Qualified Immunity

Defendants include an alternative argument in their motion for judgment on the pleadings that they are entitled to qualified immunity. *See generally Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034 (1987). However, Defendants' generic qualified immunity argument fails to address the specific allegations against any individual Defendant. (*See* Doc. 80 at 8-10). In addition, the defense of qualified immunity is available only to Defendants who have been sued in their individual capacities. In this case, Plaintiff's complaint clearly states: "This is an official capacity suit." (Doc. 1 at 1; PageID 1). In addition, to the extent that Plaintiff has prosecuted this case as if filed against the Defendants in both their individual and official capacities, the undersigned finds no need to review the qualified immunity defense for the claims on which Defendants are entitled to judgment under *Leaman* and/or res judicata. Instead, the defense will be considered only as to Plaintiff's remaining Eighth Amendment claims against Defendants Erdos, Dyer, and Bear concerning the events of January 2017.

Examining those claims, at this time and based on the very limited argument presented by Defendants, the undersigned recommends that judgment be granted in favor of Defendant Erdos alone. As stated, it remains unclear whether that Defendant has been sued in his individual capacity, such that he may assert the defense of qualified immunity. However, regardless of the capacity in which he has been sued, a re-examination of the allegations against Defendant Erdos reveals that the conditions of confinement claim against him fails to state any claim under § 1983, because the only

---

response to his ongoing concerns with his medical treatment at SOCF. The letter's author states "that you are currently only authorized a wheelchair for long distances, according to the decision of medical staff," because "[t]he medical officer feels like he should attempt to walk to the shower and to recreation in order to have the best medical outcomes for his future." (Doc. 82-1 at 2).

surviving allegations pertain to Warden Erdos's supervisory role. It is well settled that the doctrine of respondeat superior does not provided a basis for liability under 42 U.S.C.§ 1983. Because 28 U.S.C. §1915(e)(2) expressly permits dismissal "<u>at any time</u> if the court determines that…the action or appeal…fails to state a claim on which relief may be granted," the undersigned now recommends that Plaintiff's claim against the Warden be dismissed, either *sua sponte* or on qualified immunity grounds, notwithstanding the undersigned's initial determination to let that claim proceed.

### B. Plaintiff's Motion for Reconsideration or Relief of Order on Issues of Injunctive Relief and Temporary Restraining Order (Doc. 86)

In addition to the Defendants' motion for judgment on the pleadings, this R&R addresses two dispositive motions filed by Plaintiff. The first is a motion for reconsideration or relief on issues of injunctive relief and temporary restraining order. Despite the referral of said motion to the undersigned magistrate judge, the body of the motion indicates that Plaintiff seeks modification of a prior R&R concerning the denial of preliminary injunctive relief. To the extent that this motion renews Plaintiff's prior requests for the same preliminary injunctive relief, the undersigned finds no cause to re-examine her prior recommendations in this regard, and would merely incorporate as if restated the analysis the prior R&R, which was adopted over Plaintiff's objections. (*See* Doc. 78, adopted at Doc. 81).

### C. Plaintiff's Motion to Amend/Correct Complaint (Doc. 94)

On February 16, 2018, Plaintiff filed a motion seeking to further amend or correct his complaint in order to bring this case as a class action on behalf of all inmates at

SOCF,[14] based upon what Plaintiff alleges is a "pattern of conduct of systemic and gross deficiencies in staffing, facilities, equipment and/or procedures that the inmate population is effectively denied access to adequate health care." (Doc. 94 at 3, PageID 687).

Plaintiff's motion should be denied, because Plaintiff "lacks standing to assert the constitutional rights of other prisoners" and is not permitted as a pro se litigant to bring a class action lawsuit concerning prison conditions. *See Dodson v. Wilkinson,* 304 Fed. Appx. 434, 438 (6th Cir. 2008) (and cases cited therein); *see also White v. Kasich,* No. 2:12-cv-1125, 2013 WL 941440, at *10 (S.D. Ohio Mar. 8, 2013) (Deavers, M.J.) (Report & Recommendation) (explaining that the reason pro se prisoners are generally prohibited from bringing class actions is because they are unable to "adequately to represent the interests of the class"), *adopted,* 2013 WL 1281887 (S.D. Ohio Mar. 27, 2013) (Smith, J.); *Brown v. Collins,* No. 2:07-cv-826, 2008 WL 818793, at *2 (S.D. Ohio Mar. 24, 2008) (Kemp, M.J.; Frost, J.) (citing *Palasty v. Hawk,* 15 Fed. Appx. 197, 200 (6th Cir. 2001)) (same); *Marcum v. Jones,* No. 1:06-cv-108, 2006 WL 543714, at *1 (S.D. Ohio Mar. 3, 2006) (Dlott, J.) (and cases cited therein) (holding that the pro se inmate "may bring his own claims to federal court without counsel, but not the claims of others"). Therefore, Plaintiff's complaint should be limited to alleged violations of his own federal rights. *Cf. Dodson,* 304 Fed. Appx. at 438.

---

[14]A 74-page document construed to be the tendered class action amended complaint is attached to Plaintiff's motion (Doc. 94-1). Notably, Plaintiff identifies other putative class action representatives as including "Mr. Brooks," and "Mr. McDougald." Ulious Brooks and Jerone McDougald are both frequent filers who are well-known to this Court. (Doc. 94-1 at 6-7).

### III. Conclusion and Recommendations

In light of the fact that Defendants appear entitled to judgment as a matter of law under Rule 12(c) on only some of Plaintiff's claims, and because the parties do not appear to have completed discovery on the two claims on which judgment has not been recommended, the Order filed this same date will extend pretrial deadlines on those remaining claims. Otherwise, and for the reasons discussed above, **IT IS RECOMMENDED THAT:**

1. Defendants' motion for judgment on the pleadings (Doc. 80) be GRANTED ONLY IN PART;

   a.) The motion should be granted as to Plaintiff's claims that various Defendants employed excessive force against him shortly after his arrival at SOCF in September 2014, and that, also in 2014, Dr. Ahmed was deliberately indifferent to his serious medical needs;

   b.) The motion further should be granted for all claims brought against Defendant Warden Erdos, whether in his individual or official capacity;

   c.) The motion should be denied as to Plaintiff's claim that Defendant Bear used excessive force against him in January 2017, as well as his claim that Defendants Bear and Dyer placed Plaintiff in a cell that was so deficient that its conditions violated the Eighth Amendment in January 2017;

2. Plaintiff's motion for reconsideration or relief (Doc. 86) should be DENIED;

3. Plaintiff's motion to further amend/correct his complaint (Doc. 94) also should be DENIED.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

CHRISTOPHER FOSTER,                                    Case No. 1:16-cv-920

      Plaintiff,                                    Black, J.
                                                  Bowman, M.J.

     v.

STATE OF OHIO, et al.,

      Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).